**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In the Matter of the Arbitration Between:** ) | |
| ) | |
| **ALLIANCE HEALTHCARE** ) | |
| **SERVICES, INC.,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. 11 C 3275** |
| ) | |
| **ARGONAUT PRIVATE EQUITY, LLC** ) | |
| **and MEDICAL OUTSOURCING** ) | |
| **SERVICES, INC.,** ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Argonaut Private Equity, LLC (Argonaut) and Medical Outsourcing Services, Inc.

(MOS) have moved to enforce subpoenas an arbitration panel issued in connection with

an arbitration being conducted in Chicago. The subpoenas are directed to the

accounting firm Grant Thornton, LP (GT) and Marc Chiang, who works for GT. The

subpoenas call for oral testimony and production of records before a member of the

arbitration panel at a hearing in San Francisco, California. GT and Chiang (collectively

"GT") object, arguing that the subpoenas are beyond the arbitrators' authority and that,

in any event, this Court cannot enforce them. For the reasons stated below, the Court

denies the motion to enforce the subpoenas.[1]

---

[1] On July 18, 2011, the Court made an oral ruling denying the motion to enforce the
subpoenas. This Memorandum Opinion further explains the basis for the Court's ruling.

**Facts**

Alliance Healthcare Services, Inc. (Alliance) entered into an agreement with Argonaut and MOS to purchase Medical Outsourcing Services, LLP. The agreement contained a provision requiring arbitration of disputes.

Alliance hired GT to assist in conducting due diligence for the purchase. GT is headquartered in Chicago. Chiang, GT's director for transaction advisory services, oversaw the due diligence. Chiang lives and works in the San Francisco area.

In June 2010, Alliance demanded arbitration, alleging fraud and breach of warranty on the part of Argonaut and MOS. The arbitration is being conducted in Chicago. In late April 2011, Argonaut and MOS obtained from the arbitrators two subpoenas directing GT and Chiang to produce documents and give testimony in San Francisco at a preliminary hearing before one of the three arbitrators. The hearing is not the final merits hearing for the arbitration. Argonaut and MOS say they chose San Francisco for the convenience of GT and Chiang.

GT and Chiang declined to comply with the subpoenas. *Id.* at 6. Argonaut and MOS have moved this Court for an order enforcing the subpoenas. GT and Chiang oppose the motion.

**Applicable Statute**

Section 7 of the Federal Arbitration Act (FAA) states, in pertinent part:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case . . . . Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be

2

signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators. . . in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added).

## Discussion

### 1.      Validity of the arbitration subpoena

GT argues that the subpoena amounts to a request for pre-hearing arbitration discovery and thus is not enforceable in court.  The Sixth and Eighth Circuits have held that the power to compel pre-hearing discovery from a third party is implicit in the power of an arbitrator to compel production of documents from a third party for a hearing.  *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870-71 (8th Cir. 2000); *Am. Fed'n. of Television and Radio Artists*, *AFL-CIO v. WJBK-TV (New World Communications of Detroit*, *Inc.)*, 164 F.3d 1004, 1009 (6th Cir. 1999).  The Second and Third Circuits have ruled to the contrary.  *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 212 (2d Cir. 2008); *Hay Group.*, *Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 408-09 (3d Cir. 2004).  The Fourth Circuit has read section 7 of the FAA in more or less the same way as the Third, though it has suggested that an arbitration panel may subpoena a non-party for prehearing discovery upon a showing of a "special need." *See COMSAT Corp. v. Nat'l. Sci. Found.*, 190 F.3d 269, 275-76 (4th Cir. 1999).  There is no Seventh Circuit authority directly on point.

All of these decisions aside, the Court agrees with the Second Circuit that "[a]ny rule there may be against compelling non-parties to participate in discovery cannot apply to situations . . . in which the non party is 'summon[ed] in writing . . . to attend before [the arbitrators] or any of them as a witness and…to bring with him . . . [documents] which may be deemed material as evidence in the case.'" *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 577-78 (2d Cir. 2005) (quoting 9 U.S.C. § 7); *see also, Hay Group*, 360 F.3d at 407 (noting that although FAA section 7 does not authorize enforcement of an arbitration subpoena directed to a non-party in absence of a hearing, it permits a subpoena in which "the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time"). The Court also agrees that permitting an arbitrator to hold a preliminary hearing that is not a hearing on the merits "does not transform [the preliminary hearing] into a [prohibited] discovery device." *Stolt-Nielsen SA*, 430 F.3d at 578.

This conclusion is, in the Court's view, compelled by the plain language of the FAA. Section 7 unambiguously authorizes an arbitrator to summon any -party witnesses before an arbitration panel, *or before any member of the panel*, to give testimony and provide material evidence. 9 U.S.C. § 7. As the Second Circuit concluded in *Stolt*, "[n]othing in the language of the FAA limits the point in time in the arbitration process when [the subpoena] power can be invoked or says that the arbitrators may only invoke this power under Section 7 at the time of the final hearing." *Id.* at 578 (internal quotation marks and citation omitted). FAA section 7's reference to hearings "'before [the arbitrators] or any of them' suggests that the provision authorizes

the use of subpoenas at preliminary proceedings even in front of a single arbitrator, before the full panel hears the more central issues." *Id.* at 579 (quoting 9 U.S.C. § 7).

In this case, as in *Stolt*, Argonaut and MOS asked the arbitration panel to issue a subpoena for GT and its representative Mr. Chiang to produce evidence and give oral testimony before one of the arbitrators. Though the entire panel was present at the hearing in *Stolt*, FAA section 7 expressly allows subpoenas before just one of the arbitrators. Because the statute, by its terms, authorizes court enforcement of a subpoena in these circumstances, GT's characterization of the subpoena as involving discovery is beside the point.

**2.      Enforcement of the arbitration subpoena**

Under FAA section 7, a federal court's authority to enforce an arbitrator's subpoena is coextensive with the court's authority to enforce one of its own subpoenas. *See* 9 U.S.C. § 7. Service and enforcement of subpoenas in federal court is governed by Federal Rule of Civil Procedure 45. *See Dynegy Midstream Servs., LP v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006).

Argonaut and MOS sought enforcement of the subpoenas in this district even though they call for production of documents and attendance at a hearing in San Francisco. They did so presumably because FAA section 7 confers authority to enforce a subpoena only upon "the United States district court for the district in which [the] arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7. Because the arbitration proceeding is being conducted in Chicago, only a court in this district may enforce a subpoena issued by the arbitrators.

Two provisions of Federal Rule of Civil Procedure 45 make it clear, however, that the Court lacks the authority to enforce the arbitrators' subpoena directing GT and Chiang to attend a hearing and produce documents in San Francisco. First, a subpoena summoning a person to attend a hearing or trial must be issued "from the court for the district where the hearing or trial is to be held." Fed. R. Civ. P. 45(a)(2)(A). Second, a subpoena may be served only within the district of the issuing court, or if outside that district, at a place within 100 miles of the hearing. Fed. R. Civ. P. 45(b)(2).

The subpoenas at issue here satisfy neither of these requirements. First, they were issued from this district, even though the hearing is to be held in San Francisco, which is within the Northern District of California. Second, the subpoenas were served in San Francisco, which is well outside the territorial scope of this Court's subpoena authority.

In support of their request for enforcement of the subpoenas, Argonaut and MOS rely on a decision issued by the undersigned judge's respected colleague, Judge Robert Gettleman. In *Amgen Inc. v. Kidney Ctr. of Delaware County, Ltd.*, 879 F. Supp. 878 (N.D. Ill. 1995), the parties were involved in arbitration proceedings taking place in Chicago. The arbitrator issued a subpoena for a non-party to produce evidence and a representative to testify at a deposition in the Eastern District of Pennsylvania, where the non-party was located. When the non-party refused to comply, a party sought enforcement of the subpoena in that district. A judge in that district ruled that the FAA required the enforcement proceeding to be bought in the Northern District of Illinois and transferred the proceeding there. Following transfer, the non-party argued that under FAA section 7, the Northern District of Illinois was the only court in which the

enforcement action could take place, because the arbitration proceeding was being held here.  The non-party argued, however, that because a subpoena must, under Fed. R. Civ. P. 45(a)(2), be issued from the district in which the proceeding is to take place (in *Amgen*, the Eastern District of Pennsylvania), a court in the Northern District of Illinois could not compel the non-party to attend a deposition in Pennsylvania.

Judge Gettleman rejected the non-party's argument that the law in effect contained a gap precluding court enforcement of the arbitration subpoena.  He stated that Congress had declared a national policy favoring arbitration.  *Id.* at 882 (citing *Perry v. Thomas*, 482 U.S. 483 (1987)).  He further noted that arbitration proceedings commonly involve parties in more than one district or state.  Judge Gettleman concluded that "[to] find that the wording of the FAA precludes issuance and enforcement of an arbitrator's subpoena of [a non-party] outside the district where he sits  . . . would likely lead to rejection of arbitration clauses altogether," contrary to Congress' intent.  *Id.*

Accordingly, Judge Gettleman read the FAA and Rule 45 in a way that plugged the gap.  He concluded that the party that wished to issue the subpoena could do so under the district court case number assigned in connection with the subpoena enforcement proceeding and could then serve and enforce the subpoena in the Eastern District of Pennsylvania pursuant to Federal Rule of Civil Procedure 45(a)(3)(B).  *Id.* at 883.  Judge Gettleman relied in part on the fact that the parties to the arbitration had expressly agreed to arbitrate their dispute according to the provisions of the Federal Rules of Civil Procedure.  *Id.*[2]

_____

[2]  The arbitration agreement at issue in the present case contains no such language.

In *Dynegy*, the Second Circuit disagreed with the analysis the court had used in *Amgen*. *Dynegy*, 451 F.3d at 96. Faced with a predicament similar to that in *Amgen*, the court in *Dynegy* concluded that a district court in New York, which was being asked to enforce an arbitration subpoena to a non-party located in Texas, lacked personal jurisdiction over the non-party and thus could not compel it to produce documents in the District Court in Texas. *Id.* at 95-96. The court concluded that the text of the FAA did not support the decision in *Amgen.*

The Second Circuit agreed with *Amgen* that the FAA contains a gap precluding court enforcement of out-of-district subpoenas. It concluded, however, that there was no basis "to come up with an alternate method to close a gap that may reflect an intentional choice on the part of Congress, which could well have desired to limit the issuance and enforcement of arbitration subpoenas in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law." *Id.* at 96. The court agreed that "the FAA expresses a strong federal policy in favor of arbitration" but noted that "the purpose of the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." *Id.* (internal quotation marks and citation omitted). *See also Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) (stating, in response to an argument that there is a national policy favoring arbitration, that "[t]here is no such policy . . . the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate . . .") (internal quotation marks and citations omitted).

This Court agrees with the Second Circuit's decision in *Dynegy* and respectfully disagrees with Judge Gettleman's decision in *Amgen*. The express terms of FAA section 7 limit this Court's arbitration subpoena enforcement authority to the authority it has under existing law. That authority is limited to the power conferred by Rule 45; there is no other rule or statutory provision that applies in this case. Rule 45, in turn, precludes issuance of a subpoena from this district to attend a hearing in the Northern District of California. This, combined with the fact that FAA section 7 permits only a court in the district where the arbitration is being conducted to enforce an arbitration subpoena, no doubt creates an enforcement gap. But it is up to Congress, not a court, to fill such gaps.

For these reasons, the Court denies the motions to enforce the subpoenas in their current form. This does not leave Argonaut and MOS entirely without a solution, albeit a partial one. Grant Thornton LLP, as previously noted, is headquartered in Chicago. If a court has jurisdiction over a person or entity – as it does with respect to GT – Rule 45 permits the court to require that person or entity produce records pursuant to a subpoena even if they are not physically located in the District in which Rule 45 permits the subpoena to be served. *Hay Group*, 360 F.3d at 412 (citing Fed. R. Civ. P. 45, 1991 advisory committee notes). *See also* 9 J. Moore, *Moore's Federal Practice* ¶ 45.03 (3d ed. 2000) ("The subpoena should issue from the Court where the production of documents is to occur, regardless of where the documents are located."); 9A C. Wright, A. Miller, M. Kane & R. Marcus, *Federal Practice and Procedure* § 2456 at 31 (1995 & 2011 Supp.) ("Even records kept beyond the territorial jurisdiction of the

district court issuing the subpoena may be covered if they are controlled by someone subject to the court's jurisdiction.").  This will not permit the parties to obtain Chiang's testimony, given his place of residence, but it will at least permit them to obtain GT's records regarding the due diligence.

**Conclusion**

For the reasons stated above, the Court denies Argonaut's and MOS's motions for leave to issue subpoenas [docket nos. 6 & 10].  The case is set for a status hearing on August 17, 2011 at 9:30 a.m. for the purpose of determining whether there are any remaining issues for the Court to decide.

MATTHEW F. KENNELLY
United States District Judge

Date:  August 9, 2011